UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JOHNNY TIPPINS,

          Plaintiff,          Case No. 1:20-cv-598

v.                                  Honorable Janet T. Neff

K. HOLDEN et al.,

          Defendants.
_____/

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis*. This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are

meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the federal courts have entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Tippins v. Parish et al.*, No. 1:19-cv-781 (W.D. Mich. October 15, 2019); *Tippins v. NWI-1, Inc. et al.*, No. 1:16-cv-10140 (E.D. Mich.

2

Aug. 12, 2016); *Tippins v. Caruso et al.*, No. 2:14-cv-10956 (E.D. Mich. Oct. 14, 2015). All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996.

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797-98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff alleges a series of purported constitutional violations. Plaintiff is housed at the Oaks Correctional Facility (ECF), where he is a participant in the START Unit, an alternative-to-segregation program, largely for prisoners diagnosed with a serious mental illness.

3

The program provides special counseling, programming, and incentives designed to reward a prisoner's positive adjustment, with the goal of reintegrating the prisoner into the traditional general population. *See* MDOC Director's Office Memorandum (DOM) 2020-20 (eff. Jan. 1, 2020). Under the Start Plan, prisoners proceed through four stages, based on behavior, with the goal of becoming eligible for placement in the general population. *Id.*

Plaintiff complains that, on April 2, 2020, he was placed in segregation at the request of Defendant Prisoner Counselor K. Holden, ostensibly because Plaintiff was belligerent and disrespectful. Plaintiff alleges that no misconduct ticket was issued and that he did not have an opportunity to challenge the placement, allegedly in violation of his right to due process. He acknowledges, however, that, before he was moved, he met with the SCC (Security Classification Committee), which is responsible for classifying a prisoner to administrative segregation. Mich. Dep't of Corr. (MDOC) Policy Directive (PD) 04.05.120 ¶ I.

Plaintiff filed a grievance about his transfer to segregation. Defendant Resident Unit Manager McCary denied the grievance at Step I, concluding that Plaintiff had been "staged down" in the START Program because he was belligerent and disrespectful to staff. (Step-I Grievance Response, ECF No. 1-1, PageID.9.) McCary also noted that Plaintiff had supplied no evidence or witnesses to support his claim that he was not belligerent. (*Id.*) Defendant Administrative Deputy Warden Spencley signed off on the Step-I grievance. (*Id.*) Plaintiff appealed to Step II. Defendant Warden Parish denied the Step-II grievance, with an explanation that Plaintiff was staged down based on his behavior. (Step-II Grievance Response, ECF No. 1-1, PageID.11.)

Plaintiff complains that he has been in segregation for more than 30 days. While in segregation, he has had only one hour in which to make phone calls and has been permitted

4

outside exercise only in a small yard, separated from other inmates. He complains that Defendants Spencley and Parish failed to remove him from segregation. He also alleges that Defendant Holden ordered him to segregation in retaliation for his having filed unspecified grievances against Holden.

Plaintiff also complains that Prison Counselor Maseta[1] announced on April 29, 2020, that inmates who wished to go to 3 Block should press their buttons. Plaintiff pressed his button, but he was not moved. Other prisoners were moved, and Plaintiff believed a spot remained open. Plaintiff raised the issue of his transfer to 3 Block with the SCC on May 5, 2020, and he was advised that they needed to talk with Defendant Holden, after which they would let him know of the next opportunity.

Plaintiff recited an essentially identical set of alleged constitutional violations in an earlier complaint. *See Tippins v. Holden et al.*, No. 1:20-cv-426 (W.D. Mich.). In his prior action, the Court denied Plaintiff leave to proceed *in forma pauperis*, because Plaintiff had failed to allege facts showing that he was in imminent danger of serious physical injury, and his case subsequently was dismissed because Plaintiff failed to pay the filing fee. (1:20-cv-426, ECF Nos. 3-4, 9-10.) In that action, Plaintiff alleged that he was a chronic-care patient (hypothyroidism, hypertension, and pre-diabetes) who was in imminent danger of contracting COVID-19, because unnamed officers placed him in handcuffs and searched him without wearing gloves. He also alleged that not all MDOC staff wore masks when delivering meals. Plaintiff acknowledges that all ECF inmates were tested on May 11, 2020, but he complained that staff members were not tested until a later date.

---

[1] Defendant Maseta was discussed in Case No. 1:20-cv-426, but he was not officially named as a Defendant. Plaintiff has added Defendant Maseta to his current complaint.

5

As he does in the instant case, Plaintiff sought a transfer to a different unit or prison. He also sought damages against Defendant Holden for violating his rights under the First and Fourteenth Amendments by refusing to transfer him to Unit 3, and damages against the other Defendants (with the exception of Defendant Maseta) for failing to resolve the incident with Holden. He sought unspecified changes to protect him from being at risk from COVID-19.

Plaintiff has not changed his allegations concerning the conduct about which he complains and for which he claims entitlement to relief in the form of damages and/or transfer. Plaintiff has, however, changed his rationale for why he is in imminent danger sufficient to permit him to proceed *in forma pauperis* under § 1915(g).

Plaintiff now asserts that he is in imminent danger because he has a sinus problem and has trouble breathing, swallowing, and sleeping because of his exposure to air passing through filthy vents. He asserts that the air problems affect all of the units at ECF (apparently including 3 block), that he previously had this problem at the Alger Correctional Facility (LMF), where he was housed in segregation for 13 months. Plaintiff contends that the dust causes him to suffer headaches, chest pain, sneezing, and coughing. He asks that the MDOC, not any individual Defendant, transfer him to another facility that has no dust problems. He seeks damages for the actions of Holden, Maseta, McCary, Spencley, and Parish for putting him in segregation without due process, for not resolving his grievances about that placement, and for not transferring him to 3 Block.

Because Plaintiff does not allege actions by Defendants that would entitle Plaintiff to relief that would alleviate the alleged breathing issues, Plaintiff is not in imminent danger from these Defendants. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (seminal case, holding that there be some nexus between the imminent danger alleged by the prisoner and the

6

legal claims asserted in his complaint); *Andrews v. Cervantes*, 493 F.3d 1047, 1053-54 (9th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison); *see also Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (citing *Pettus*); *Chavis v. Chappius*, 618 F.3d 162, 171 (2nd Cir. 2010) (citing *Pettus* and requiring a nexus between the claims alleged and the asserted imminent danger). To the extent that Plaintiff requests a transfer to 3 Block, the requested relief would not resolve his problem. To the extent that he requests a transfer to another prison, he makes no allegation that these Defendants either have the authority to transfer him or that they denied his transfer; he alleges only that they did not transfer him to 3 Block when he requested it. To the extent that his problem may be resolved by cleaning the air vents, he never asked any Defendant to address the problem with the air vents, and he does not allege that they have denied such relief; granting such relief therefore would not be appropriate based on the unconstitutional actions he alleges. Finally, to the extent that he requires medical treatment, none of the Defendants is a medical provider, and Plaintiff makes no allegation that any Defendant is responsible for or denied him medical treatment.

Thus, the alleged imminent danger is wholly unrelated to the claims raised and cannot be resolved in the current action against these Defendants. Although the Sixth Circuit has not yet specifically addressed the nexus issue in a published opinion, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the five circuits that have recognized a nexus rule in order to protect the meaning of the entire provision. As the *Pettus* court reasoned, a reading of § 1915(g) that incorporates a nexus rule is consistent with the fundamental rule of statutory construction requiring that a statute be read as a whole. 554 F.3d at 297. The rule of

construction has been regularly repeated by the Supreme Court: "The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), *quoted in Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007).

As applied to § 1915(g), the exception must be read in light of the strong general thrust of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). In addition, § 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought, would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—e.g., retaliation, interference with his mail, unauthorized searches—as long as he can state that he is in imminent danger from something, even something unrelated to the his claims for relief. Such a reading also is inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule  *See* 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 250-51 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited

exceptions, all doubts should be resolved in favor of the general provision rather than exceptions.").

Plaintiff's allegations concerning "imminent danger" are incapable of redress in the instant case based on the alleged conduct of Defendants. As a consequence, Plaintiff is not entitled to proceed *in forma pauperis* under the "imminent danger" exception to the three-strikes rule of § 1915(g).

Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $400.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fee within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $400.00 filing fee.

Dated:  July 29, 2020                         /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**